**Opinion filed April 19, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00301-CV

_____

## IN THE INTEREST OF C.G., M.M.T., AND A.M.T., CHILDREN

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C47093**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the parents of C.G., M.M.T., and A.M.T. The mother filed an appeal. On appeal, she challenges the sufficiency of the evidence to support the termination of her parental rights. We affirm.

In a single issue on appeal, Appellant asserts that the evidence is legally and factually insufficient to support the termination of her parental rights. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in

the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, the evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that Appellant had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, had engaged in conduct

2

or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, and had failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. *See id.* § 161.001(b)(1)(D), (E), (O). Appellant challenges each of these findings.

On March 29, 2016, the Department of Family and Protective Services received an intake stating that Appellant and her boyfriend had guns, methamphetamine, and marihuana in Appellant's home. On March 31, Vickie Willingham, an investigator with the Department, accompanied Wendy Shawver, a family-based safety services worker, to Appellant's home. Willingham spoke to Appellant through the window, but eventually Appellant allowed her to come inside. Initially, Appellant's boyfriend was "really confrontational," and Appellant refused to cooperate. Willingham and Shawver left.

Ten minutes later, Appellant called Willingham and allowed her to return to her home. Appellant completed an oral swab drug screen, which was negative for all substances. On April 8, Appellant completed a hair strand drug test, which was positive for 1496 mg/pg of cocaine, which indicated occasional use. The children were then placed in foster care, and the Department obtained temporary conservatorship.

Maggie Proehl, a conservatorship specialist for the Department, created a family plan of services for Appellant and began working with Appellant on those services. On May 3, 2016, the trial court ordered Appellant to comply with the family service plan. Appellant signed the family service plan on July 21, 2016. Under the family service plan, Appellant was required to, *inter alia*, abstain from any criminal activities and refrain from associating with anyone else involved in criminal activities or with CPS history; obtain and maintain safe, stable, and sanitary

housing for the children; and obtain and maintain appropriate, stable, and legal employment to show an ability to provide for the children financially.

Proehl testified that the Department had some concerns with Appellant's compliance with the family service plan. For example, at the time of trial, Appellant was living in a house that had failed city inspection because the roof needed to be replaced and some of the doors were sealed shut, creating a fire hazard. Additionally, the carport had rotting wood and was sagging, and the backyard had broken glass. Prior to living in this house, Appellant had been living at the Hope Shelter for approximately four to five months. Further, Appellant had not been able to maintain stable employment and did not have reliable transportation. Appellant had approximately eight jobs in the span of eighteen months and relied on family and friends to give her rides to and from work. Appellant's lack of transportation often caused Appellant to miss scheduled visitation times with the children. Finally, at the time of trial, Appellant had pending criminal charges as a result of Appellant and her boyfriend taking a child out of the state.

Proehl further testified that C.G., who was seven years old at the time of trial, had been displaying "sexually acting out behaviors," which prompted the Department to move him to a residential treatment center and then to a separate foster home. At the time of trial, C.G. struggled with aggression and had been working with a behavioral therapist. M.M.T., who was four years old at the time of trial, was also struggling with aggression and seemed to have a lot of anxiety. M.M.T. had been receiving medical attention and therapy for these issues. A.M.T., who was two years old at the time of trial, was delayed in his speech. A.M.T. had been receiving early childhood intervention services for this issue.

The record contains clear and convincing evidence that Appellant did not fully comply with her court-ordered family service plan—as required to support a finding under Section 161.001(b)(1)(O). Appellant failed to maintain safe and stable

4

housing for the children and failed to maintain stable employment. Because it must be shown that the parent has committed only one of the acts listed in Section 161.001(b)(1)(A)–(U), we need not reach the merits of Appellant's remaining sub-issues. *See* TEX. R. APP. P. 47.1. Further, based upon the *Holley* factors and the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. The trial court could reasonably have formed a firm belief or conviction that it would be in each child's best interest for Appellant's parental rights to be terminated. We hold that the evidence is both legally and factually sufficient to support the trial court's order to terminate Appellant's parental rights. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

JUSTICE

April 19, 2018

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.